IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSSOURI

| | |
|---|---|
| Cotter Corporation (N.S.L.), <br><br> Petitioner, <br><br> v. <br><br> United States of America; Republic Services, Inc.; Bridgeton Landfill, LLC; Allied Services, LLC; Westlake Landfill, Inc.; Rock Road Industries, Inc., Mallinckrodt LLC; and EverZinc USA, Inc., <br><br> Respondents. | Case No. 4:19-mc-00774-AGF |

**<u>RENEWED REQUEST FOR RELIEF BY THE UNITED STATES OF AMERICA</u>**

**INTRODUCTION**

On October 15, 2019, Cotter Corporation (N.S.L.) ("Cotter") filed a petition to perpetuate the testimony of its former counsel, Edward McGrath, pursuant to Rule 27. Subsequently, Respondent United States of America filed a response to the petition under seal (Dkt. No. 23) arguing that Cotter has waived any privilege as to its decision to dispose of leached barium sulfate from Latty Avenue into the West Lake Landfill. Cotter did so by (1) voluntarily disclosing some but not all of its communications with its counsel regarding this subject and (2) attempting to use the testimony of its former counsel to demonstrate that Cotter acted in good-faith with regard to its disposal of materials from the Latty Avenue Site at the West Lake Landfill. As a result of this waiver, the United States asked this Court prior to Mr. McGrath's deposition to hold that Cotter has waived its attorney client privilege regarding its decisions regarding the disposal of materials from Latty Avenue at the West

1

Lake Landfill and require Cotter to produce documents related to the disposal of materials from Latty Avenue at the West Lake Landfill that were previously withheld under the attorney-client privilege. Respondents Republic Services, Inc., Bridgeton Landfill, LLC, Allied Services, LLC, Westlake Landfill, Inc., and Rock Road Industries, Inc., filed a similar request, styled as a Motion to Compel. *See* Dkt. No. 28.[1]

This Court held a hearing on Cotters' request to perpetuate testimony on November 25, 2019, and issued an order on November 27, 2019, permitting the perpetuation of the testimony of Edward McGrath, Cotter's former counsel. The Court declined to take action on pending request to the Court, finding that "the issues raised . . . may be more thoroughly and properly examined on the merits after McGrath's deposition, on a fuller record, and perhaps in a future case rather than this Rule 27 proceeding." Order at 1-2 (Dkt. No. 41). The Court required that "within fifteen (15) days following the deposition, the parties shall advise the Court of the status of this matter, what if any further relief they seek, and the legal basis for such relief within the scope of this Rule 27 proceeding." *Id.* at 2. After seeking and receiving an extension to file such a response, the Respondent United States of America hereby renew its request in its prior filing with the Court.

## FACTUAL BACKGROUND

The deposition of Mr. McGrath occurred on December 2 and 3, 2019. Of most importance here, Mr. McGrath testified that most of his knowledge about Cotters' decision

---

[1] The United States' Response and associated exhibits were filed under seal. To avoid further filings under seal, the United States will incorporate those filings by reference in this pleading.

2

to dispose of leached barium sulfate from Latty Avenue into the West Lake Landfill was gained second-hand, from his client, Cotter. First, Mr. McGrath had no first-hand knowledge of the disposal. He testified that he had never been to the Latty Avenue Site, nor did he have any "personal knowledge of how the . . . leached barium sulfate residue was packed, shipped, transported to the West Lake Landfill?" Deposition Excerpt (Vol. 2) at 197:8-14 (filed under seal as Exhibit 1); *see also id.* at 184:6 to 184:8 and 185:18 to 185:20.

Second, many of the key facts alleged by Mr. McGrath in his May 15, 1975, Memorandum to his client, Cotter Corporation, are based not upon his personal knowledge, but only based upon what his client (or others) told him. *See* Deposition Excerpt (Vol. 1) at 10:12 to 10:2 (Ex. 1) ("Q: [W]ere all of the significant events included in here, were those events events you were aware of based upon your personal knowledge? A: No. Q: Were some of those events events you were aware of only because Mr. Marcott of Cotter told you about them? A: Or someone else told me about them."). For instance, Mr. McGrath wrote in his 1975 Memo that Cotter undertook a careful analysis of AEC regulations prior to its decision to dispose of leached barium sulfate in the Westlake Landfill and determined it to be permissible. *See* May 1975 Memo at 5 (Dkt. No. 23-1). However, Mr. McGrath testified that, with respect to this statement, he had "no independent knowledge of any of the facts set forth therein," but instead was simply told this by Dave Marcott of Cotter Corporation. Deposition Excerpt (Vol. 1) at Pages 14:16 to 15:9.

In sum, Mr. McGrath testified that he had very little personal knowledge regarding Cotters' decision to dispose of leached barium sulfate from Latty Avenue into the West Lake

3

Landfill, but instead was only able to recite statements that his client, Cotter, told him regarding its actions and decision-making process.[2]

## ARGUMENT

**I. Cotter Has Waived Its Attorney-Client Privilege As to Its Decision to Dispose of Materials from Latty Avenue into the West Lake Landfill.**

The United States reiterates its request to the Court (*see* Dkt. No. 23) that it should find that Cotter waived its attorney client privilege regarding its decision to dispose of materials from Latty Avenue into the West Lake Landfill and therefore require Cotter to disclose documents previously withheld on that basis.[3] Mr. McGrath's testimony further supports this request.

### a. Cotters' Prior Voluntary Disclosures of Privileged Communications Require a Finding of Waiver.

First, nothing has changed since the prior hearing bearing on the United States' arguments that Cotter's *voluntarily* disclosure of some, but not all, of its communications with its counsel Mr. McGrath relating to its disposal of materials from Latty Avenue into the West Lake Landfill waived the privilege to all documents on that subject matter. Cotter waived its privilege by disclosing Mr. McGrath's May 1975 Memorandum, and in disclosing Mr. McGrath's April 5, 2019, declaration. *See United States v. Workman*, 138 F.3d 1261, 1263 (8th Cir. 1998) ("Voluntary disclosures of attorney client communications expressly waive[]

---

[2] While it is true that Mr. McGrath provided limited testimony based on his own knowledge, that fact is irrelevant to the issues before this Court.

[3] The United States is not renewing its request that this Court order that the testimony of Mr. McGrath cannot be used in support of any defense to the United States' claims under Section 107 of CERCLA at either the Latty Avenue or West Lake Landfill sites or any other legal or factual claim or defense not specifically identified by Cotter in its petition.

the privilege [, and t]he waiver covers any information directly related to that which was actually disclosed.").

Second, and as stated previously, the United States believes that Cotter is attempting to use the testimony of its former counsel to demonstrate that Cotter acted in good-faith with regard to its disposal of materials from the Latty Avenue Site at the West Lake Landfill.[4] Accordingly, this too should result in an implied waiver of the attorney client privilege. *See Workman*, 138 F.3d at 1263. "[T]he determination of good faith reliance necessarily turns upon the subjective intention of the party claiming reliance and, therefore, demands investigation into attorney-client communications where such an intention would be manifested." *United States v. Exxon Corp.*, 94 F.R.D. 246, 248 (D.D.C. 1981); *see also United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991) (finding waiver and rejecting assertion that "facts cannot waive the privilege, because the attorney-client privilege does not extend to underlying facts").

### b. Mr. McGrath's Testimony Confirms that Cotter Waived Its Privilege.

As noted above, Mr. McGrath had no meaningful first-hand knowledge regarding Cotters' decision to dispose of leached barium sulfate from Latty Avenue in the Westlake Landfill. Indeed, his May 1975 Memorandum reciting the history of Cotter's cleanup of Latty Avenue appears to be almost entirely based upon statements or documents provided to him by his client. Nonetheless, Cotter elected to ask Mr. McGrath to write a memorandum

---

[4] Although there is no affirmative defense of good faith to liability under CERCLA, the good-faith of a party can be relevant as to an allocation of the costs of a cleanup as between several liable parties.

summarizing its activities using only the hand-picked assertions that it provided to him in May 1975. Now, Cotter wishes to affirmatively use that hearsay document and/or Mr. McGrath's summary testimony of his client's selected disclosures to support claims or defenses in the potential litigation. Cotter has not disclosed exactly why that testimony is relevant. Cotter does concede that it intends to use this testimony to argue that Cotter acted in good-faith when it disposed of the radioactive waste. While the United States considers most of Mr. McGrath's testimony, and his 1975 memorandum, to be inadmissible hearsay, the issue before this Court at this time is whether Cotter, after affirmatively using its attorney to testify about these subjects based on his communications with his client, Cotter may do so without also disclosing all other communications with Mr. McGrath regarding that very same subject, *i.e.* Cotter's disposal of the radioactive residues from Latty Avenue in the Westlake Landfill and whether there is any possibility that such disposal falls within any acceptable definition of "good faith." As the United States previously stated, where there is a good-faith defense, "the waiver must pertain to all documents bearing upon the subject matter of the defense." *Exxon Corp.*, 94 F.R.D. at 249. "Otherwise, the party interposing the defense is free to divulge only those documents that are most favorable to his defense; this is precisely the inequitable result that the waiver doctrine seeks to avoid." *Id.*

      Cotter has refused to provide any clarity or limitations as to how it intends to use Mr. McGrath's testimony and whether, in fact, it will assert that it acted in good-faith in regards to its decision to dispose of the residues from the Latty Avenue Site at the West Lake Landfill. In response to an e-mail following the deposition of Mr. McGrath, counsel stated simply that "Cotter plans to use the Rule 27 testimony to the fullest extent permissible to

respond to claims in the context of the cases in which those claims are raised, including any claims asserted by the government."[5] Hence, the scope of the subject matter waiver must be similarly broad.

### c. A Finding of Waiver and Disclosure of Documents Previously Withheld Should Be Ordered in this Rule 27 Proceeding.

For those reasons stated previously, the Court should hold that Cotter has waived the attorney-client privilege regarding the disposal of materials from Latty Avenue at the West Lake Landfill. Further, and as a result of that waiver, Cotter should be ordered to disclose to the Respondents the documents previously withheld from them prior to the deposition that were listed on the previously noted privilege log (Dkt. No. 23-3), to the extent that they relate to the subject matter for which privilege has been waived.[6] The United States requests 30 days to review the previously withheld document to determine whether further questioning of Mr. McGrath—whose deposition is currently being held open for resolution of these issues—is appropriate.

Such disclosure and potential follow-up questioning *now* is necessary for fairness to all the parties. This matter is now fully briefed before this Court, and it would be inefficient to require Respondents to gain access to these documents through a separate proceeding and then re-notice a further deposition of Mr. McGrath, assuming further deposition questioning

---

[5] To be clear, it no longer matters how Cotter asserts it wishes to use the testimony. The questions asked by counsel for Cotter at the deposition, and the subjects in the 1975 memorandum clearly encompassed broad subject matters associated with the handling and disposal of the radioactive waste.

[6] The United States reserves the right to also argue that some of these documents fail to meet the standard for being protected under either the Attorney-Client Privilege or Work Product Privilege.

7

is appropriate. Moreover, should such follow-up questioning be necessary, and given the previously stated reasons by Cotter as to why preservation of Mr. McGrath's testimony was appropriate, further delay is unwarranted.

## CONCLUSION

For the foregoing reasons, and for those stated in the United States' previous request to the Court, Cotter should be found to have waived its attorney-client privilege as to its decision to dispose of radioactive residues from Latty Avenue at the Westlake Landfill and provide previously withheld documents on that subject to Respondents for potential use in follow-up questions to Mr. McGrath.

DATE: January 17, 2020                                  Respectfully Submitted,

/s/Phillip R. Dupré
**Phillip R. Dupré**
Environmental Defense Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044
Tel: (202) 616-7501
Fax: (202) 514-8865
E-mail: phillip.r.dupre@usdoj.gov

**David L. Dain**
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
999 18th Street
Suite 370 – South Terrace
Denver, CO 80202
Tel: (303) 844-7371
Email: david.dain@usdoj.gov

8

## CERTIFICATE OF SERVICE

I hereby certify that the above Renewed Request for Relief by the United States of America was served via the U.S. District Court electronic filing system on January 17, 2020.

/s/Phillip R. Dupré
Attorney for United States of America