UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| Cotter Corporation (N.S.L.),<br><br>        Petitioner,<br><br>vs.<br><br>United States of America, et al.<br><br>        Respondents. | )<br>)<br>)<br>)   Case No.  4:19-mc-00774-AGF<br>)<br>)<br>)<br>)<br>)<br>) |

### DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM EDWARD McGRATH

COME NOW Defendants Bridgeton Landfill, LLC, Allied Services, LLC and Republic Services, Inc. (collectively "Defendants") by and through their counsel, and respectfully move[1] this Court to compel Petitioner, Cotter Corporation (N.S.L.) ("Cotter"), to produce certain documents and information withheld as privileged, pursuant to Fed. R. Civ. P. 45.[2]

In support of this Motion, Defendants state as follows:

1.      In 2019, Edward J. "Ed" McGrath ("Mr. McGrath"), an attorney that last represented Cotter in 1998, signed a declaration regarding matters directly at issue in this case

---

[1] Defendants filed an almost identical Motion to Compel Production of Documents and Testimony from Edward McGrath with this Court on November 18, 2019 (Dkt. No. 28).  Mr. McGrath was deposed in December 2019, and then the United States and these Defendants, among others, filed status reports and renewed requests for relief with the Court (Dkt. Nos. 45, 48, 56).  Defendants' prior Motion and the status report and request for further relief by the United States, with supporting exhibits, were filed under seal. To avoid further filings under seal, Defendants incorporate these filings by reference in this Motion.

The case was automatically stayed on October 12, 2020, following the filing of a Notice of Suggestions of Pendency of Bankruptcy and Automatic Stay of Proceedings by Defendant Mallinckrodt LLC. *See,* Dkt. No. 60.  On November 4, 2021, this Court entered an order denying all pending motions without prejudice to refiling following lifting of the stay (Dkt. No. 60), and Defendants now renew their requests for relief.

[2] **Local Rule 3.04 Statement**:  Counsel for Defendants, Bill Beck and Ally Cunningham; counsel for Cotter, John Gisleson and John McGahren; and counsel for the United States, Phil Dupre and David Dain spoke at length about the issues presented in this Motion in a telephone conference on the afternoon of October 1, 2019, and Defendants issued a subsequent letter to Cotter on October 17, 2019 outlining their position.

1

(the "Declaration").  Three months later, Cotter voluntarily produced this declaration, and more than 140 pages of exhibits, to Defendants.  The declaration was included in a much larger production.  In the declaration, Mr. McGrath provides information regarding Cotter's practices and decisions for the time period relevant to this case based on his own knowledge and a review of the relevant records.   The 2019 Declaration is designated confidential and was filed under seal as **Exhibit A** to Defendants' Motion to Compel Production of Documents and Testimony from Edward McGrath. Dkt. No. 25.

2. Included in the exhibits to the Declaration was a memorandum from Mr. McGrath to Cotter, drafted in 1975 when Mr. McGrath was actively representing Cotter, a pure attorney-client communication, which further discussed Cotter's practices and decisions for the time period relevant to this case.  The 1975 Declaration is designated confidential and was filed under seal as **Exhibit B** to Defendants' Motion to Compel Production of Documents and Testimony from Edward McGrath.  Dkt. Nos. 26 and 27.

3. Cotter has waived the attorney-client privilege by voluntarily disclosing and using the Declaration and seeking to affirmatively use the Declaration and Mr. McGrath's testimony.  Cotter cannot affirmatively offer testimony of a former attorney about the advice he gave his client and simultaneously hide behind the privilege for related information.  Bridgeton is entitled to all drafts of the declaration, all communications between Mr. McGrath and the Cotter lawyers that created the declaration, all documents and information provided to Mr. McGrath or available to Mr. McGrath to create his narrative, and any materials that Cotter has "redacted" from the disclosed information.

4. Cotter has further waived the attorney client privilege by including among the documents it attached to the Declaration the 1975 memorandum from Mr. McGrath to his client

discussing in detail the history of Cotter's actions, communications with him, and decisions. By producing this memorandum, Cotter has voluntarily waived any privilege that might have otherwise protected Mr. McGrath's conversations with his client on these topics. Bridgeton is entitled to drafts of the 1975 memorandum, any supporting documents used to draft the memorandum that have not already been produced, and any materials that Cotter has "redacted" from the memorandum and related documents.

5. By affirmatively creating the Declaration and producing it along with the related exhibits, Cotter both voluntarily waived the attorney client privilege, and also waived the privilege under Missouri's "fairness doctrine." The "fairness doctrine" is implicated by Cotter's attempt to strategically use certain evidence while at the same time trying to hide related evidence behind a privilege. *State ex rel. Shelter Mut. Ins. Co. v. Wagner*, 575 S.W.3d 476, 481 (Mo. Ct. App. 2018).

## FACTS

6. Ed McGrath is former outside regulatory counsel for Cotter who claims he has factual knowledge of issues acutely relevant to this case, which he acquired from 1961 to 1998. Mr. McGrath is believed to be in his mid- 80's now.

7. In July 2019, Cotter voluntarily produced a Declaration signed by Mr. McGrath on April 5, 2019 (along with approximately 1,800 other documents). The Declaration recounts substantive information and advice that Mr. McGrath gave to his client. The Declaration (without recounting its contents because it is designated "confidential") purports to recount the status of the law, the positions of parties, and the knowledge of persons and entire government agencies. The date of the Declaration makes clear that Cotter created this Declaration

3

specifically for litigation purposes. It is not a "legacy" document. It was not "found" in the operating records of Cotter.

8. Information regarding the state of the law and agency knowledge is offered in the Declaration, as is information regarding Cotter's state of knowledge. Mr. McGrath could only be aware of what Cotter anticipated if his client had told him.

9. Mr. McGrath's Declaration also comments on the significance of the information to Cotter, and on Cotter's thought processes. This must have been shared in an attorney-client communication.

10. Mr. McGrath's Declaration specifically recounts legal opinions that he provided to his client, Cotter.

11. Further, Mr. McGrath's Declaration attaches and references (among more than 140 pages of exhibits) a 1975 attorney-client communication from Mr. McGrath to Cotter Executive Vice-President, David Marcott. Again, without revealing the content of the communication, the text necessarily relies upon attorney-client communications with Cotter.

12. Defendants served Mr. McGrath with a subpoena duces tecum seeking the testimony and documents identified in paragraph seven, above. A true and correct copy of the subpoena was attached as **Exhibit C** to Defendants' Motion to Compel Production of Documents and Testimony. Dkt. No. 28. Mr. McGrath was personally served with the subpoena by a Washington County, Maine Sheriff's Deputy on October 15, 2019.[3]

13. In particular, Defendants seek information from Mr. McGrath in the form of documents pertaining to: his voluntary Declaration and the 1975 memorandum to Cotter; the

---

[3] Defendants noticed the deposition of Mr. McGrath in a case that was pending in Missouri state court. Based on the record before it, the trial court required disclosure of some information, but not all that is sought here.

4

Atomic Energy Commission's ("AEC") issuance of a Source Material License to Cotter in 1969; Cotter's operations at Latty Ave.[4] from 1965 to 1990; Cotter's treatment of waste products from its activities at Latty Ave., including leached barium sulfate residue ("LBSR"); Cotter's ultimate disposal of the LBSR; investigations of Latty Ave. and the West Lake Landfill by the AEC and its successor, the Nuclear Regulatory Commission ("NRC"); and Cotter's communication with state and federal regulatory agencies and other third parties regarding all of the above topics.

14. In addition to voluntarily providing the Declaration and the 1975 memorandum, Cotter has affirmatively sought to "perpetuate" Mr. McGrath's testimony described in the special action filed in this Court in which Cotter named Defendants, as well as others.

## ARGUMENT

15. By producing Mr. McGrath's Declaration and its exhibits to Defendants, particularly the 1975 memorandum, Cotter has voluntarily waived the attorney-client privilege with respect to the subject matter of the topics covered in those disclosures.  *See State ex rel. Behrendt v. Neill*, 337 S.W.3d 727, 729 (Mo. Ct. App. 2011) (*citing Smith v. Smith*, 839 S.W.2d 382, 385 (Mo.App.1992)) ("Although the privilege may be waived, such waiver must be voluntary.").

16. Nevertheless, Cotter seeks to withhold approximately forty documents exchanged between Mr. McGrath and his client related to the matters previously disclosed in Mr. McGrath's Declaration on the basis of attorney-client privilege and/or work product protection, and tried to redact certain statements from the documents that it did produce.

---

[4] "Latty Avenue" and "Latty Ave." refer to the facility located at 9200 Latty Avenue, Hazelwood, MO.

17. This Court should compel Cotter to produce the documents it has withheld based on Mr. McGrath's attorney-client privilege or work product protection because Cotter has voluntarily waived this privilege.

18. In addition to voluntarily waiving this privilege by producing Mr. McGrath's declaration and related materials, Cotter also waives the privilege by attempting to invoke it in a fundamentally unfair way. *See Wagner*, 575 S.W.3d at 481 (*quoting State ex rel. St. John's Reg'l Med. Ctr. v. Dally*, 90 S.W.3d 209, 215 (Mo. Ct. App. 2002)) ("The so-called 'fairness doctrine' is grounded in the notion that it is unfair to permit a party to make use of privileged information as a sword when it is advantageous for the privilege holder to do so, and then as a shield when the party opponent seeks to use privileged information that might be harmful to the privilege holder.").

19. Cotter seeks to rely on Mr. McGrath's testimony, and to preserve and perpetuate it in other cases, but simultaneously seeks to withhold portions of the relevant documentation from the opposing party. This behavior—"disclos[ing] some selected communications for self-serving purposes"—is prohibited and constitutes waiver. *Id.*

20. Missouri courts invoke the "fairness doctrine" specifically to prohibit this behavior. *Dally*, 90 S.W.3d at 216 (*citing Brandt v. Medical Defense Associates,* 856 S.W.2d 667, 672 (Mo. banc 1993)) (Claims of privilege may not be used "strategically to exclude unfavorable evidence while at the same time admitting favorable evidence.").

21. As such, Defendants respectfully seek an order compelling production of documents withheld on the basis of the attorney-client privilege, and production of any documents or communication used to create the Declaration or the 1975 memorandum, pursuant to Fed. R. Civ. P. 45.

6

22. Defendants made several attempts to meet and confer, but the parties were unable to reach an agreement on this issue of whether producing Mr. McGrath's Declaration and related materials constitutes a waiver.

WHEREFORE, Defendants respectfully request that this Court grant their motion, compel Cotter to produce documents withheld on the basis of the attorney-client privilege and work product protection, compel Mr. McGrath to provide any documents and testimony related to the topics disclosed in his April 2019 declaration, including any communications regarding the Declaration or the 1975 memorandum and any drafts of the Declaration or the 1975 memorandum, and for such other and further relief this Court deems just and proper.

Dated:  November 18, 2021                LATHROP GPM LLP

By:     /s/ Allyson E. Cunningham
        William G. Beck        # 26849
        Allyson E. Cunningham # 64802
        2345 Grand Boulevard, Suite 2200
        Kansas City, Missouri 64108-2618
        Telephone:     (816) 292-2000
        Telecopier:    (816) 292-2001
        william@lathropgpm.com
        allyson.cunningham@lathropgpm.com

        **Attorneys for Defendants**

**CERTIFICATE OF SERVICE**

    I hereby certify that a copy of the above pleading was served via the U.S. District Court ECM/ECF system this 18th day of November 2021.

                                                        */s/* Allyson E. Cunningham
                                                        An Attorney for Defendants